Glenn D. Bellamy (Ohio Bar No. 0070321)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati OH 45202
E-mail: gbellamy@whe-law.com
Tel: (513) 707-0243
Fax: (513) 241-6234

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| **ABC IP, LLC, a Delaware limited liability company,** ) | CASE NO. _____ |
| ) | |
| **and** ) | |
| ) | **COMPLAINT FOR PATENT** |
| **Rare Breed Triggers, Inc., a Texas corporation,** ) | **INFRINGEMENT** |
| ) | |
| **Plaintiffs.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **v.** ) | |
| ) | |
| **Star Development, LLC, a Wyoming limited liability company, d/b/a Star Dev LLC,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **Sarah Stokes, an individual,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

This is an action for patent infringement in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse Star Development, LLC d/b/a Star Dev LLC and Sarah Stokes (collectively, "Defendants") of infringing U.S. Patent Nos. 10,514,223, 11,724,003, 12,036,336, 12,274,807, and 12,636,403 as follows:

1

## PARTIES

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3. Upon information and belief, Star Development, LLC d/b/a Star Dev LLC is a limited liability company organized under the laws of Wyoming with an address of 4539 N 22nd St, Ste R, Phoenix, AZ 85016.

4. Upon information and belief, Sarah Stokes is an individual residing in Phoenix, AZ 85016, who is an owner of Star Dev LLC and directs its operations, including directing Star Dev LLC to sell products in violation of the Asserted Patents.

## JURISDICTION AND VENUE

5. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)–(c), 281, and 284–85.

6. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

7. Personal jurisdiction over Defendants is proper in this District because the Defendants reside in and have a regular and established place of business in this District.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in or have committed acts of infringement and have a regular and established place of business in this District.

## BACKGROUND

9.      This lawsuit asserts direct, contributory, and induced infringement of U.S. Patent Nos. 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), 12,274,807 ("the '807 Patent), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents").

10.     The '223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the '223 Patent is valid and enforceable. A true and correct copy of the '223 Patent is attached as Exhibit A.

11.     The '003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the '003 Patent is valid and enforceable. A true and correct copy of the '003 Patent is attached as Exhibit B.

12.     The '336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '336 Patent is valid and enforceable. A true and correct copy of the '336 Patent is attached as Exhibit C.

13.     The '807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the '807 Patent is valid and enforceable. A true and correct copy of the '807 Patent is attached as Exhibit D.

14.     The '403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the '403 Patent is valid and enforceable. A true and correct copy of the '403 Patent is attached as Exhibit E.

15.     ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

16.     Rare Breed is the exclusive licensee of the Asserted Patents.

17.    Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

18.    Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

<strong>THE INVENTIONS</strong>

19.    A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

20.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery

4

position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

21.    In contrast, in what Plaintiffs have coined a "forced reset" trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

22.    The '223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

23.    The '003 Patent, the '336 Patent, the '807 Patent, and the '403 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) "forced reset" semiautomatic mode.

24.    The claims of the patents define the scope of the patented inventions.

## THE INFRINGING DEVICE

25.    On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including a (3-Position) Disruptor ("the Disruptor"), which embodies the technology claimed in at least the '223, '003, '336, '807, and '403 Patents.

26.    On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale the Disruptor, in multiple variants, including at least:

   a.   As a standalone product; and/or

b.  <u>Pre-installed in a receiver and/or complete firearm</u>.

27.    Exemplary images are shown below:

 



28.     The Disruptor also operates in a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and "forced reset" semiautomatic with cam modes by moving the safety selector between positions.

29.     When the Disruptor operates in the "forced reset" mode, the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

30.     When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook,

at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

31.    When in the "forced reset" semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be mechanically moved to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

## COUNT I — INFRINGEMENT OF THE '223 PATENT

32.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

33.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '223 patent. Such unlicensed products include the Disruptor.

34.    On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

35.    An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '223 Patent is illustrated in the chart below:

8

| '223 Patent, Claim 4 | The Disruptor |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Disruptor is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |
| and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising: | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. |
| a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins; | The Disruptor includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins. |

9

| '223 Patent, Claim 4 | The Disruptor |
|---|---|
| | **Hammer and trigger pins**<br><br>**First Openings**<br><br>**Housing**     **Second Openings**<br><br>(Plaintiff–generated renderings of the Disruptor here and below) |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis | The Disruptor includes a hammer (blue) with a sear notch and is mounted in the housing to pivot on a transverse axis. |

10

| '223 Patent, Claim 4 | The Disruptor |
|---|---|
| between set and |  **Set Position** |
| released positions; | **Released Position** |

11

| '223 Patent, Claim 4 | The Disruptor |
|---|---|
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis<br><br>between set | The Disruptor has a trigger member (green) that has a sear and is mounted in a housing to pivot on a transverse axis.<br><br><br>**Set Position** |
| and released positions, | <br>**Released Position** |
| the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue). |

| '223 Patent, Claim 4 | The Disruptor |
|---|---|
| the contact causing the trigger member to be forced to the set position; | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position. |

13

| '223 Patent, Claim 4 | The Disruptor |
|---|---|
| | |
| a locking bar pivotally mounted in the housing | The Disruptor includes a locking bar (red) that is pivotally mounted in the housing.<br><br> |
| and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, | The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position. |

14

| '223 Patent, Claim 4 | The Disruptor |
|---|---|
|  | **First position Mechanically Blocked** |
| and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position | The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position. |
| in which the trigger member can be moved by an external force to the released position. | In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position. |

36.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '223 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate

direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

37. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 4 of the '223 Patent.

38. On information and belief, Defendants also contribute to the infringement of the '223 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '223 Patent.

39. Defendants have engaged in egregious infringement behavior with knowledge of the '223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '223 Patent and that the '223 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '223 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '223 Patent.

40. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '223 Patent pursuant to 35 U.S.C. § 271.

16

41. By their actions, Defendants' infringement of the '223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

42. By their actions, Defendants' infringement of the '223 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

43. Defendants' infringement of the '223 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

44. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

45. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II — INFRINGEMENT OF THE '003 PATENT

46. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

47. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 patent. Such unlicensed products include the Disruptor.

48. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

17

49.    An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '003 patent is illustrated in the chart below:

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Disruptor includes a housing (magenta) that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.<br><br>**First Openings** **Housing** **Second Openings**<br><br>The Disruptor is sold with hammer and trigger pins. |

18

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| | **Hammer and trigger pins** |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. **Hammer** (Plaintiff-generated renderings of the Disruptor here and below) |

19

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| between set and | <br>**Set Position** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br>**Released Position** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin | The Disruptor includes a trigger member (green) that has a sear and is mounted in the housing to pivot on the trigger member pin |

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| between set<br><br>and released positions, | <br>**Set Position**<br><br>**Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |

21

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| |  |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position. |

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| | |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position **Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position |

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| | **Released Position** |
| a disconnector having a hook for engaging said hammer | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook<br><br> |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (green) member pin |

24

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| | |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Disruptor has a locking member (red) that is mounted in the housing and it pivots on a transverse locking member pin<br><br> |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

25

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| | **First Position Mechanically Blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled **Second Position Not Mechanically Blocked** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

26

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and "forced reset" semi-automatic positions. |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook<br><br>**Standard Semi-Automatic Position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Disruptor is in the "forced reset" semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be mechanically moved to the set position. |

27

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
|  | <br>**Trigger Pulled to the Rear, Hammer First Touches the Trigger**<br><br>**Hammer has now Caused the Trigger to Move to the Reset Position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook. |

| '003 Patent, Claim 4 | The Disruptor |
|---|---|
| | **Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger. |

50.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '003 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging,

advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

51.    On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 4 of the '003 Patent.

52.    On information and belief, Defendants also contribute to the infringement of the '003 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '003 Patent.

53.    Defendants have engaged in egregious infringement behavior with knowledge of the '003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '003 Patent and that the '003 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '003 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '003 Patent.

54.    By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '003 Patent pursuant to 35 U.S.C. § 271.

30

55. By their actions, Defendants' infringement of the '003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

56. By their actions, Defendants' infringement of the '003 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

57. Defendants' infringement of the '003 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

58. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

59. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT III — INFRINGEMENT OF THE '336 PATENT

60. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

61. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '336 patent. Such unlicensed products include the Disruptor.

62. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents.

31

63.    An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 3 of the '336 patent is illustrated in the chart below:

| '336 Patent, Claim 3 | The Disruptor |
| --- | --- |
| 3. A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism. |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Disruptor includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin. The Infringing Devise is sold with hammer and trigger pins. |

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
|  |  **Hammer and trigger pins** |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.<br><br>**Hammer**<br><br>(Plaintiff-generated renderings of the Disruptor here and below) |

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
| between set and | <br>**Set Position** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | <br>**Released Position** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin | The Disruptor includes a trigger member (green) that has a sear and is mounted in the housing to pivot on the trigger member pin |

34

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
| between set | **Set Position** |
| and released positions, | **Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
|  |  |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position |

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
| | |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position<br><br><br><br>**Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position |

37

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
| | **Released Position** |
| a disconnector having a hook for engaging said hammer | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook. |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (green) member pin |

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
|  | |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Disruptor has a locking member (red) that is mounted in the housing and it pivots on a transverse locking member pin.<br><br> |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
| | **First Position Mechanically Blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled. **Second Position Not Mechanically Blocked** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a | The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a |

40

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
| receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, | receiver to pivot between safe, standard semi-automatic, and "forced reset" semi-automatic positions.<br><br><br><br>Safety Selector |
| said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook, | While in the "forced reset" semi-automatic position the disconnect (orange) moves to a position that does not allow the disconnector hook to catch the hammer (blue) hook<br><br><br><br>**"Forced Reset" Semi-Automatic Position** |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook |

41

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
| pull said trigger member to fire the firearm, and | **Standard Semi-Automatic Position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Disruptor is in the "forced reset" semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be mechanically moved to the set position. **Trigger Pulled to the Rear, Hammer First Touches the Trigger** |

42

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
| | **Hammer has now Caused the Trigger to Move to the Reset Position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook<br><br>**Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger |

64.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '336 patent.

43

Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

65. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 3 of the '336 Patent.

66. On information and belief, Defendants also contribute to the infringement of the '336 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '336 Patent.

67. Defendants have engaged in egregious infringement behavior with knowledge of the '336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '336 Patent and that the '336 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '336 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '336 Patent.

68. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '336 Patent pursuant to 35 U.S.C. § 271.

44

69.    By their actions, Defendants' infringement of the '336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

70.    By their actions, Defendants' infringement of the '336 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

71.    Defendants' infringement of the '336 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

72.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

73.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT IV — INFRINGEMENT OF THE '807 PATENT

74.    Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

75.    In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 patent. Such unlicensed products include the Disruptor.

76.     On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

77.     An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 1 of the '807 patent is illustrated in the chart below:

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism.<br> |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.<br><br>(Plaintiff-generated renderings of the Disruptor here and below) |

46

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| between set and | \n\n**Set Position** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | \n\n**Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis | The Disruptor includes a trigger member (green) that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis |

47

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| between set |  **Set Position** |
| and released positions, | **Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue). |

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, |  The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position. |

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position |
| | **Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position. |

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
|  | <br>**Released Position** |
| a disconnector having a hook for engaging said hammer hook | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook<br><br> |
| and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis |

51

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
|  | |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, | The Disruptor has a locking member (red) that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position.<br> |
| said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| | **First Position Mechanically Blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,<br><br>said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled<br><br><br><br>**Second Position Not Mechanically Blocked**<br><br>The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position |

53

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions, | The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and "forced reset" semi-automatic positions.  Safety Selector |
| whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, <br><br> at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and | While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook  **Standard Semi-Automatic Position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Disruptor is in the "forced reset" semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be mechanically moved to the set position. |

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| | <br>**Trigger Pulled to the Rear, Hammer First Touches the Trigger**<br><br><br>**Hammer has now Caused the Trigger to Move to the Reset Position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook. |

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| |  **Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger. |

78.    On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '807 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

79.     On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the '807 Patent.

80.     On information and belief, Defendants also contribute to the infringement of the '807 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '807 Patent.

81.     Defendants have engaged in egregious infringement behavior with knowledge of the '807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '807 Patent and that the '807 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '807 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '807 Patent.

82.     By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '807 Patent pursuant to 35 U.S.C. § 271.

83.     By their actions, Defendants' infringement of the '807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

84.     By their actions, Defendants' infringement of the '807 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

85.     Defendants' infringement of the '807 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

86.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

87.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT V — INFRINGEMENT OF THE '403 PATENT

88.     Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

89.     In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 patent. Such unlicensed products include the Infringing Device.

90.     On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claim 38, literally and/or under the doctrine of equivalents.

91.     An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 38 of the '403 Patent is illustrated in the chart below:

| '403 Patent, Claim 38 | The Disruptor |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Disruptor is part of a trigger mechanism.<br><br><br><br>**Disruptor** |
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Disruptor has a hammer (blue) that has a hammer hook and pivots on a transverse axis.<br><br><br><br>**Disruptor** (**Installed**)<br><br>(Plaintiff-generated renderings of Disruptor here and below) |

59

| '403 Patent, Claim 38 | The Disruptor |
|---|---|
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; | The Disruptor has a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis.<br><br><br><br>**Disconnector (orange)** |
| a trigger member; and | The Disruptor has a trigger member (green) which has a disconnector hook and pivots on a transverse disconnector pivot axis<br><br><br><br>**Trigger Member (green)** |

| '403 Patent, Claim 38 | The Disruptor |
|---|---|
| a safety selector adapted to be movable between a standard semi-automatic position | The Disruptor has a safety selector adapted to be movable between a (**standard semi-automatic**) position,<br><br>**Disruptor (installed) in Standard Semi-Automatic Position** |
| and a forced reset semi-automatic position, | . . . and a "forced reset" semi-automatic position.<br><br>**Disruptor (installed) in "Forced Reset" Semi-Automatic Position** |

61

| '403 Patent, Claim 38 | The Disruptor |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (green) is rearwardly actuated.<br><br> |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (blue) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),<br><br> |

| '403 Patent, Claim 38 | The Disruptor |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (green) must be reduced to permit the trigger member to then be actuated to fire a firearm.<br> |

92.     On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '403 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products.

93.     On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 38 of the '403 Patent.

94.     On information and belief, Defendants also contribute to the infringement of the '403 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by

Defendants of the components of the Infringing Device, such as the trigger assembly or the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '403 Patent.

95.     Defendants have engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '403 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '403 Patent.

96.     By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

97.     By their actions, Defendants' infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

98.     By their actions, Defendants' infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

99.     Defendants' infringement of the '403 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

64

100.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

101.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

a.    Each of the Asserted Patents has been and continues to be infringed by Defendants;

b.    Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c.    Each of the Asserted Patents is enforceable and not invalid;

d.    A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; or other such equitable relief as the Court determines is warranted;

e.    A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of each of the Asserted Patents; or other such equitable relief as the Court determines is warranted;

65

f.      An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

g.      An award of all other damages permitted by 35 U.S.C. § 284, including increased damages up to three times the amount of compensatory damages found;

h.      An award of all profits received by Defendants from sales and revenues of any kind made as a result of their trademark infringement and unfair competition;

i.      An award of all damages sustained by Plaintiffs as a result of Defendants' infringement, including ascertainable damages, the costs incurred by Plaintiffs for the costs for this action, and Plaintiffs' reasonable attorneys' fees;

j.      A finding that this action is an exceptional case under 35 U.S.C. § 285, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

k.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.


DATED: July 14, 2026                      Respectfully submitted,

                                          */s/ Glenn D. Bellamy*
                                          Glenn D. Bellamy (Ohio Bar No. 0070321)
                                          **WOOD HERRON & EVANS LLP**
                                          600 Vine Street, Suite 2800
                                          Cincinnati OH 45202
                                          E-mail: gbellamy@whe-law.com
                                          Tel: (513) 707-0243
                                          Fax: (513) 241-6234

66

Matthew A. Colvin (Pro Hac Vice)
Texas Bar No. 24087331
**FISH & RICHARDSON P.C.**
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

*Attorneys for Plaintiffs*
*ABC IP, LLC, and Rare Breed Triggers, Inc.*